636 So.2d 63 (1994)
The DOLLAR SAVINGS AND TRUST COMPANY, Appellant,
v.
Joseph R. SOLTESIZ and Nanette M. Soltesiz, and P.T.M., Inc., Appellees.
The DOLLAR SAVINGS AND TRUST COMPANY, Appellant,
v.
BARNETT BANK OF SOUTHWEST FLORIDA and Joseph R. Soltesiz and Nanette M. Soltesiz, Appellees.
Nos. 92-01352, 93-00715.
District Court of Appeal of Florida, Second District.
March 16, 1994.
Rehearing Denied April 28, 1994.
Robert J. Gill, Isphording Korp Payne, Sarasota, and Richard J. Thomas, Henderson, Covington, Stein, Donchess & Messenger, Youngstown, for appellant.
Betsy L. Benedict, Stanford R. Solomon, P.A., Tampa, for appellees Joseph R. Soltesiz and Nanette M. Soltesiz.
Ronald B. Cohn and Laura L. Whiteside, Cohn & Cohn, P.A., Tampa, for appellee Barnett Bank of Southwest Florida.
CAMPBELL, Judge.
These consolidated appeals emanate from two circuit court decisions holding that appellant, Dollar Savings and Trust Company's (Dollar), foreign judgment, recorded pursuant to section 55.503, Florida Statutes (1989), was subordinate and inferior to the subsequently executed and recorded second mortgage of appellee, Barnett Bank of Southwest Florida (Barnett). Barnett's mortgage was recorded within the thirty-day period following the issuance of notice of recordation of Dollar's foreign judgment.
While Dollar raises several issues in these appeals, the overriding question is whether the date of recording of a foreign judgment pursuant to section 55.503 determines that judgment lien's priority in regard to subsequently recorded liens. We determine that the date of recording does so determine the lien's priority and, accordingly, reverse the orders appealed in each case.
This case began in November 1989, when Dollar made two loans totalling $2,100,000 to appellee P.T.M., Inc., a manufacturing business in Ohio, owned and operated by appellee Joseph R. Soltesiz. Appellees Joseph and Nanette Soltesiz personally guaranteed the loans. Following a default by P.T.M., Inc. and the Soltesizes, on July 17, 1990, an Ohio Court of Common Pleas entered judgment for Dollar against P.T.M., Inc. and the Soltesizes for $2,300,000.
Dollar then recorded the Ohio judgment in Sarasota County on August 6, 1990, pursuant to section 55.503. On August 8, 1990, pursuant to section 55.505, Florida Statutes (1989), the circuit court clerk mailed the required *64 notice of recording, and that notice was received by the Soltesizes on August 11, 1990. Attempting to utilize the provisions of section 55.509(1), Florida Statutes (1989), the Soltesizes, on September 4, 1990, filed a "countercomplaint" seeking declaratory and injunctive relief. The Soltesizes contested neither the jurisdiction of the Ohio court nor the validity of the Ohio judgment. The countercomplaint alleged only that the Soltesizes were uncertain of their "rights and obligations" under the Ohio judgment. The Soltesizes then moved, without allegations with respect to the jurisdiction of the Ohio court or the validity of the Ohio judgment, "to confirm the invalidity" of the foreign judgment. The motion challenging the Ohio judgment was denied May 7, 1991.
Contemporaneous with their Florida challenge to the Ohio judgment, the Soltesizes moved in Ohio for relief from the Ohio judgment pursuant to Ohio Rule of Civil Procedure 60(B), which provides that a motion made pursuant to the rule does not affect the finality of a judgment or suspend its operation. The Ohio court "overruled" the Soltesizes' challenge on December 7, 1990.
When the foreign judgment was recorded by Dollar in Sarasota County on August 6, 1990, the Soltesizes owned a condominium in Sarasota County encumbered with a first mortgage to Barnett's predecessor executed in 1979.
On August 14, 1990, three days after their receipt of the recordation notice of the Ohio judgment from the circuit court clerk and twenty-one days prior to their action for declaratory and injunctive relief, the Soltesizes executed a second mortgage in favor of Barnett which further encumbered their Sarasota condominium for an additional $70,000. On that same day, the Soltesizes executed a Barnett form identified as "Owner's Borrower's Affidavit" in which they failed to disclose the Sarasota County recordation of Dollar's foreign judgment. Barnett disbursed the $70,000 loan proceeds to the Soltesizes by bank draft dated August 15, 1990. The Barnett second mortgage was recorded in Sarasota County on August 17, 1990. While Barnett had received a title insurance commitment effective July 17, 1990, that commitment specifically exempted subsequently recorded encumbrances. Barnett apparently never requested an updated commitment or a title insurance policy before closing on their mortgage loan on August 15, 1990.
During January 1992, the Soltesizes contracted to sell their Sarasota condominium and requested Dollar to release its foreign judgment lien. Dollar refused. The Soltesizes, in their still-pending section 55.509 declaratory judgment action, then filed an emergency motion to determine lien priority. In that motion, the Soltesizes first advised the trial court that eight days after the recordation of the Ohio judgment, the Soltesizes executed a promissory note to Barnett secured by a second mortgage on their Sarasota condominium. The Soltesizes sought a determination that the Ohio judgment was inferior to the Barnett second mortgage because that mortgage was recorded while the Ohio judgment was under an alleged section 55.509(1) challenge. The trial court rendered a final order that recognized the inconsistency between sections 55.503(1) and 55.507, Florida Statutes (1989), but determined that the Ohio judgment was subordinate to the Barnett second mortgage because the Barnett mortgage was recorded within the thirty-day period. That judgment was appealed in case number 92-01352. Barnett was not a party to that first circuit court action because that action was instituted by the Soltesizes solely as a challenge to the Ohio judgment. On appeal, this court reversed without determining the priority issue and remanded for further proceedings below after joinder of Barnett. Dollar Savings and Trust Co. v. Soltesiz, 18 Fla. L. Weekly D661 (Fla. 2d DCA Mar. 5, 1993). It appears that Dollar did not become aware of the Barnett second mortgage until the Soltesizes requested a release of lien from Dollar in order that they could consummate the sale of their Sarasota condominium.
On December 11, 1992, Barnett filed a mortgage foreclosure action, which sought to foreclose its defaulted first and second mortgages. That action is the subject of appeal number 93-00715. Dollar was joined as a defendant in that action because Barnett sought to foreclose the Dollar judgment lien *65 as inferior to its mortgages. Dollar responded to the foreclosure complaint with affirmative defenses and its own counterclaim against Barnett and a crossclaim against the Soltesizes which sought to foreclose the Dollar foreign judgment lien. Barnett moved to dismiss the Dollar counterclaim and strike the affirmative defenses on the grounds that the previous trial court ruling, although on appeal, was res judicata on that issue. The trial court dismissed the Dollar counterclaim as to Barnett, granted the motion to strike the affirmative defenses on the grounds that the previous trial court ruling, although on appeal, was res judicata on that issue. The trial court dismissed the Dollar counterclaim as to Barnett, granted the motion to strike the affirmative defenses and, although not requested by the pleadings, made a specific finding that, as a matter of law, section 55.507 prohibited a recorded foreign judgment from becoming a lien until after expiration of the thirty days from the date of the mailing of the notice required by section 55.505 by the circuit court clerk.
As we earlier observed, the central and controlling issue framed by these appeals is whether the date of recording of a foreign judgment pursuant to section 55.503 determines that judgment's priority and, consequently, whether the date for determining priority may be different from the date such a judgment becomes enforceable as a lien. This case appears to be one of first impression interpreting chapter 55 as it now exists in regard to the recordation and priority of foreign judgments. While various sections of chapter 55 may appear to lead to contrary results, we are required to interpret those provisions to reach a logical result and one that will facilitate what we determine to be the intent of the legislature in its enactments.
In doing so, we interpret sections 55.10, 55.502, 55.503, 55.505, 55.507 and 55.509 (§§ 55.501-55.509 are referred to as the "Florida Enforcement of Foreign Judgments Act") in a manner that establishes the priority of the lien of a judgment recorded thereunder at the moment of recording. The enforcement of that lien must await the expiration of the thirty-day period established in sections 55.507 and 55.509 or the culmination of any action filed pursuant to section 55.509. There is no anomaly or inconsistency in delaying enforcement of a lien beyond the date or act that establishes the lien's priority. Mortgages, for instance, have their priority as a lien established upon recording of the mortgage, but their enforcement as a lien awaits a default and subsequent foreclosure actions. But for the use of the terms "effective" and "operate" in section 55.507, the statutory provisions under consideration speak clearly in support of our conclusions as to the interpretation that should be followed. Section 55.507 is intriguing, to say the least, in the choice of words used. The title to section 55.507 is "Lien; when effective," the term "effective" being the action word. However, the body of section 55.507 does not use the term "effective" but substitutes the term "operate" when it provides that "a foreign judgment does not operate as a lien until 30 days after the mailing of the notice by the clerk. When an action authorized in s. 55.509(1) is filed, it acts as an automatic stay of the effect of this section." (Emphasis supplied.)
It is significant to us that section 55.507 does not state that the recorded foreign judgment shall not be a lien until thirty days after the mailing of the notice. There is very little, if anything, to distinguish the apparent intended effect of section 55.507 from the immediately preceding section 55.505(3), which states: "No execution or other process for enforcement of a foreign judgment recorded hereunder shall issue until 30 days after the mailing of notice by the clerk. When an action authorized in s. 55.509(1) is filed, it acts as an automatic stay of the effect of this section." (Emphasis supplied.) We conclude that the "automatic stay of the effect of this section" provided in both sections 55.505(3) and 55.507 is a further stay (or extension) of the thirty-day hiatus for enforcement until the culmination of the 55.509 action.
Strangely enough, section 55.509, in speaking to an action filed thereunder, provides that "the Court shall stay enforcement of the foreign judgment and the judgment lien upon the filing of the action by the judgment debtor." (Emphasis supplied.) It seems to add to the confusing nature of the various statutory provisions to provide for a courtordered stay in section 55.509 when an automatic stay, based upon the same events, has been provided for in sections 55.505(3) and *66 55.507. Perhaps the legislative intent that there be a lien of a foreign judgment upon its recording pursuant to chapter 55 that is not enforceable until later is best evidenced by section 55.509(2), which provides:
(2) If the judgment debtor shows the circuit or county court any ground upon which enforcement of a judgment of any circuit or county court of this state would be stayed, the court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state.
(Emphasis supplied.) If there was no intent that a recorded foreign judgment should be or become a lien upon recording, there would have been no need to provide for the substitute security as is provided in section 55.509(2). That interpretation is, to us, a logical extension and verification of the clearly expressed provision of section 55.503(1), which provides that a foreign judgment properly recorded by the clerk of the circuit court "shall have the same effect and shall be subject to the same rules ... and it may be enforced ... as a judgment of a circuit or county court of this state." Since section 55.10, Florida Statutes (1989) provides that a state judgment "becomes a lien" when a certified copy is recorded, we are constrained to interpret the provisions of chapter 55 as they relate to the recording of foreign judgments in the same manner as we are initially instructed in section 55.503. This interpretation is actually supported by our earlier case of National Equipment Rental, Ltd. v. Coolidge Bank & Trust Co., 348 So.2d 1236 (Fla. 2d DCA 1977). That case was decided prior to the adoption of the "Florida Enforcement of Foreign Judgments Act" in 1984. In that case, noting the absence of any such authority, we held:
We have found no authority which makes a distinction between the need to establish a foreign judgment as a judgment of the situs state in order to obtain execution and a similar requirement as a prerequisite for establishing a lien. Some courts have assumed that foreign judgments cannot be liens until they have been reduced to local judgments.
... .
In view of the need for stability in real property title law and in the absence of compelling authority to the contrary, we hold that the filing of a certified copy of a foreign judgment does not create a lien upon real property in the county in which it is filed. A lien is established only when the creditor establishes the foreign judgment as a Florida judgment. In effect, we construe Section 55.10 as referring only to Florida judgments.
(Citations omitted.) It, therefore, appears to us that when the "Florida Enforcement of Foreign Judgments Act" was enacted, it supplied the very authority we found lacking in Coolidge. While, as we have observed, section 55.507 confuses by referring alternately to the terms "effective" and "operate," we conclude the confusion is dissipated by the repeated reference in other sections of chapter 55 to "enforcement" as the term of art.
An interpretation that a recorded foreign judgment did not become a lien for the purpose of determining its priority until after the thirty-day notice period or after the culmination of a 55.509 action filed by the judgment debtor would enable the judgment debtor to determine priorities among creditors by choosing or not to file such an action. We cannot conclude that such was the intent of the legislature. Instead, we conclude the priority of a foreign judgment lien is established upon its recordation pursuant to the provisions of chapter 55 and section 695.11, Florida Statutes (1989), and its enforcement is delayed in accordance with the statutory provisions.
We, therefore, reverse both orders which are the subject of these consolidated appeals and remand for further treatment consistent with this opinion.
DANAHY, A.C.J., and ALTENBERND, J., concur.